**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **PHARMACY CORPORATION OF AMERICA,** | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-25-4161** |
| **v.** | * | |
| **KEY HEALTH MANAGEMENT, LLC, et. al.,** | * | |
| **Defendants.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Pharmacy Corporation of America d/b/a PharMerica ("PharMerica") filed this civil action against defendants Cambridge MD Opco LLC d/b/a Mallard Bay Nursing and Rehabilitation ("Mallard Bay"); 520 Kerr Avenue Opco LLC d/b/a Caroline Center for Rehabilitation and Health ("Caroline"); 11974 Edgehill Terrace Opco, LLC d/b/a Manokin Center for Rehabilitation and Health ("Manokin"); and Key Health Management, LLC ("Key Health") (collectively, "Defendants"). ECF No. 1. In its Complaint, PharMerica asserts claims for breach of contract against Mallard Bay and Key Health in Counts I and II, respectively; various quasi-contract and equitable claims against all Defendants in Counts III through VI;[1] a claim for tortious interference against Key Health in Count VII; and a claim for attorneys' fees against Mallard Bay and Key Health in Count VIII.

[1] A claim for breach of implied contract in Count III is asserted only against Mallard Bay, Manokin, and Caroline. Each of the remaining equitable claims are asserted against all Defendants.

Defendants move for partial dismissal of Counts I and II and complete dismissal of Counts III through VIII. ECF No. 15. PharMerica filed an opposition to Defendants' motion, ECF No. 20, to which Defendants replied, ECF No. 21. A hearing is not necessary to resolve the motion. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained herein, Defendants' motion to dismiss is granted in part and denied in part. Counts III through VI are dismissed as to Mallard Bay and Key Health, and Count VIII is dismissed in its entirety.

## I. BACKGROUND

This action arises from Defendants' alleged failure to pay PharMerica for pharmacy-related goods and services provided to residents of three skilled nursing facilities in Maryland and Defendants' alleged improper termination of three Pharmacy Services Agreements ("PSAs") governing those services. The following facts are drawn from allegations in PharMerica's Complaint.

Defendants operate, manage, and own three skilled nursing facilities: the Mallard Bay Facility, the Caroline Facility, and the Manokin Facility (collectively, the "Facilities"). ECF No. 1 ("Compl.") ¶ 1. Mallard Bay, Caroline, and Manokin each participate in the Medicare program through a provider agreement with the United States Department of Health and Human Services, Centers for Medicare & Medicaid Services, or its agent. *Id.* ¶¶ 11, 28, 45. PharMerica alleges that Medicare statutes and regulations require participating skilled nursing facilities to furnish certain services, including pharmacy services, to their residents. If a facility does not provide those services directly, it must contract with an outside provider. *Id.* ¶ 12. When a facility obtains Medicare-covered services through such an arrangement, it is responsible for reimbursing the outside provider for services subject to Medicare's consolidated billing requirements. *Id.* ¶ 13.

PharMerica is a California corporation with its principal place of business in Kentucky. *Id.* ¶ 2. In 2022 and 2023, PharMerica entered into PSAs governing pharmacy-related services for the Facilities. The first agreement, the Mallard Bay PSA, was entered by Mallard Bay and became effective on November 1, 2022. *Id.* ¶ 10. The Caroline PSA and the Manokin PSA were each entered by Key Health "on behalf of" Caroline and Manokin, respectively, and became effective on December 1, 2023. *Id.* ¶¶ 27, 33, 44, 50. PharMerica alleges, upon information and belief, that Mallard Bay, Caroline, and Manokin (collectively, the "Facility Defendants") are alter egos of Key Health. *Id.* ¶¶ 17, 34, 51.

The three PSAs contain materially identical provisions. Each agreement designates PharMerica as the exclusive provider of pharmacy-related goods and services for the relevant Facility. *Id.* ¶¶ 20, 37, 54. Each PSA requires the contracting Defendant to pay PharMerica within 90 days of the account statement date, except that, upon termination, all outstanding charges become due within 30 days. *Id.* ¶¶ 21, 38, 55. The agreements further provide that unpaid, undisputed balances accrue interest at an annual rate of 1.5% and that PharMerica is entitled to recover its costs of collection, including reasonable attorneys' fees. *Id.* ¶¶ 23, 40, 57.

The PSAs also contain substantially similar termination and renewal provisions. Either party may terminate the PSA, with or without cause, by providing written notice of non-renewal at least 60 days before the expiration of the then-current contract term. *Id.* ¶¶ 24, 41, 58. Otherwise, the agreement would automatically renew for successive one-year terms. *Id.* Each PSA automatically renewed on December 1, 2024, extending the agreements through December 1, 2025. *Id.* ¶¶ 25, 42, 59.

On or about September 8, 2025, PharMerica received an email from Key Health CEO Jack Hirth purporting to terminate PharMerica's services at all three Facilities, effective immediately.

*Id.* ¶ 61. According to the Complaint, after this termination notice, Defendants immediately ceased ordering pharmacy-related goods and services for the Facilities from PharMerica and advised that they would no longer use PharMerica as the provider of those services. *Id.* ¶ 62.

At the time Defendants improperly attempted to terminate the PSAs by email, Defendants had not paid all amounts then due under the agreements. *Id.* ¶¶ 61, 67. According to PharMerica, this failure to pay constituted a material breach and rendered the attempted termination ineffective. *Id.* PharMerica therefore contends that each PSA automatically renewed for an additional one-year term through December 1, 2026. *Id.* ¶ 68. Defendants' cessation of pharmacy orders and failure to pay outstanding invoices caused it to suffer damages, including unpaid contract balances and lost profits for pharmacy-related goods and services that otherwise would have been supplied during the renewed contract terms. *Id.* ¶¶ 69–70.

PharMerica alleges, upon information and belief, that Defendants received Medicare reimbursement for all or a substantial portion of the pharmacy-related goods and services PharMerica provided to the Facilities. *Id.* ¶ 63. PharMerica further alleges that Defendants reported PharMerica's invoice charges as deductible business expenses for federal tax purposes and as allowable expenses on Medicare and Medicaid cost reports. *Id.* ¶¶ 64–65.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. "To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in [Rule] 8(a)(2), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 596 (D. Md. 2014) (citation omitted).

In ruling on such a motion, the court accepts all factual allegations in the complaint as true but does not defer to legal conclusions drawn from those facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). A complaint must allege "a plausible claim for relief, *id.* at 679, which means it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Generally, when a Rule 12(b)(6) motion is filed, the court's review is limited to the allegations in the complaint, documents that are incorporated into the complaint by reference, and those properly attached to the complaint as exhibits. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). "Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment." *Yampierre v. Baltimore Police Dep't*, Civ. No. ELH-21-1209, 2023 WL 6049489, at *23 (D. Md. Sept. 15, 2023) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). A court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). For a document to be integral, a "plaintiff's claims must turn on, or otherwise be based on, the contents

of the document." *Brentzel v. Fairfax Transfer and Storage, Inc.*, No. 21-1025, 2021 WL 6138286, at *2 (4th. Cir. Dec. 29, 2021) (per curiam) (citing *Goines*, 822 F.3d at 166).

## III. DISCUSSION

### A. Counts I and II

In Counts I and II of the Complaint, PharMerica alleges that Mallard Bay and Key Health breached the PSAs at issue in three ways: (1) by failing to pay amounts owed for goods and services provided; (2) by ineffectively terminating the agreement via email; and (3) by failing to maintain PharMerica as the exclusive provider of pharmacy services after the invalid termination. *See* Compl. ¶ 74 (alleging Mallard Bay breached the Mallard Bay PSA); *id.* ¶ 81 (alleging Key Health breached the Caroline and Manokin PSAs). Defendants move to dismiss only claims based on the second and third alleged breaches. *See* ECF No. 15-2 at 13. The Court finds Counts I and II of the Complaint to state plausible claims for breach of contract under Kentucky law[2] based on Defendants' purported termination of the PSAs without notice and subsequent failure to comply with the contracts' exclusivity provisions.

To state a claim for breach of contract under Kentucky law, "a plaintiff[] must plead the following elements: (1) a contract existed; (2) . . . the contract was breached; and (3) damages resulted from the breach." *Robards v. BLK Out Transp.*, 623 F. Supp. 3d 810, 821 (W.D. Ky. 2022)

---

[2] When a federal court sits in diversity jurisdiction, it applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497–98 (1941); *see also Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th 192, 199 n.3 (4th Cir. 2024). Maryland courts recognize the doctrine of *lex loci contractus*, which requires that, "when determining the construction, validity, enforceability, or interpretation of a contract, [a court must] apply the law of the jurisdiction where the contract was made. *Cunningham v. Feinberg*, 107 A.3d 1194, 1204 (Md. 2015). Moreover, federal law "generally favors enforcement of forum-selection clauses." *Brown v. Emery Fed. Credit Union*, Civ. No. DLB-21-591, 2022 WL 991387, at *3 (D. Md. Mar. 31, 2022) (citing *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010)). Here, the parties agree that the PSAs contain choice-of-law provisions stating that any matter or dispute is to be governed by the laws of Kentucky. *See* ECF No. 15-2 at 14; ECF No. 20 at 10. Accordingly, all substantive claims related to the PSAs are governed by Kentucky law.

(citing *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723 (Ky. Ct. App. 2007)). "Under well-settled contract law in Kentucky, 'in the absence of ambiguity a written instrument will be strictly enforced according to its terms.'" *Henderson v. Skyview Satellite Networks, Inc.*, 474 F. Supp. 3d 893, 904 (W.D. Ky. 2020) (cleaned up) (quoting *Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky. 1965)). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002). "Words are to be accorded their 'ordinarily used meaning unless the context requires otherwise.'" *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. Ct. App. 2009) (quoting *Bays v. Mahan*, 362 S.W.2d 732, 733 (Ky. 1962)).

Here, there is no dispute that the PSAs constitute express contracts between the parties. Specifically, PharMerica entered the Mallard Bay PSA with Mallard Bay effective November 1, 2022, Compl. ¶¶ 10, 72, and the Caroline and Manokin PSA with Key Health effective December 1, 2023, *id.* ¶¶ 27, 44, 79. Additionally, facts alleged in the Complaint suffice to plead a breach by Mallard Bay and Key Health in terminating their contracts without notice.

Each PSA expressly requires termination by written notice in advance of expiration and automatic renewal. Section 6.A of each PSA provides:

> Either party may terminate, with or without cause, this Agreement by providing the other party ***with written notice of non-renewal not less than sixty (60) days prior to the expiration of the then current Term***. If the party desiring to elect termination of this Agreement fails to provide such notice, this Agreement automatically renews for the period specified in Section 1.[3]

[3] Section 1 of each PSA provides for automatic renewal "for successive terms of one (1) year(s) each . . . , unless otherwise terminated in accordance with [the] Agreement." ECF No. 15-3 (Mallard Bay PSA) § 1; ECF No. 15-4 (Caroline and Manokin PSA) § 1.

ECF No. 15-3 (Mallard Bay PSA) (emphasis added), § 6.A; ECF No. 15-4 (Caroline and Manokin PSA) § 6.A (emphasis added).[4] Additionally, Section 6.B provides that the PSA "can be terminated at any time by either party, with or without cause, upon ***not less than sixty (60) days written notice to the other party***." Mallard Bay PSA § 6.B (emphasis added); Caroline and Manokin PSA § 6.B (emphasis added). In Section 17.D, each PSA states, in pertinent part, that

> [a] party ***shall*** send any written notice required or permitted by this Agreement by certified mail, postage prepaid, return receipt requested, or by use of a national overnight delivery service, to the other party at the notice address listed on the signature page of [the] Agreement, or to such other address that the other party designates upon written notice given in accordance with this provision.

Mallard Bay PSA § 17.D (emphasis added); Caroline and Manokin PSA § 17.D (emphasis added). Thus, on its face, each PSA sets two requirements for any termination: (1) written notice of termination at least 60 days in advance of expiration; and (2) transmission of that written notice by delivery to a designated address. PharMerica alleges that Mallard Bay and Key Health breached their PSAs by terminating them by other means—namely, immediate termination by email from Key Health's CEO.

Defendants argue that because PharMerica admittedly received the September 8, 2025, email, actual notice was sufficient notwithstanding any deviation from the contractual notice provisions. They argue that, because PharMerica admittedly received actual notice of the termination, it cannot challenge the method by which notice was transmitted. ECF No. 15-2 at 13.

Defendants principally rely on *New London Tobacco Market, Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393 (6th Cir. 2022). There, the Sixth Circuit, relying on *Equitable Life Assurance Society*

---

[4] Defendants attach copies of the PSAs to their motion to dismiss. There is no dispute regarding the authenticity of these exhibits, and the PSAs are integral to the breach-of-contract claims asserted in PharMerica's Complaint. Therefore, the Court may consider the PSAs without converting Defendants' motion to one for summary judgment. *See Goines*, 822 F.3d at 166 (citations omitted).

*of the United States v. Lawrence*, 563 S.W.2d 717 (Ky. 1978), stated that, under Kentucky law, "the specifying of a method of giving notice does not exclude other methods" where actual notice is received. *New London*, 44 F.4th at 403 (quoting *Equitable Life*, 563 S.W.2d at 719). In *Equitable Life*, however, the Kentucky Supreme Court emphasized that the contract at issue "does not provide that the only methods of giving notice are those contained in the contract." 563 S.W.2d at 719. Rather, the agreement there merely provided that notice by personal delivery or mail would be "sufficient"; these methods were "but two of many ways that notice can be given." *Id.*[5] Defendants also cite *Devere Construction, Inc. v. Redlee Construction & Development, Inc.*, No. 2024-CA-0485-MR, 2025 WL 728328 (Ky. Ct. App. Mar. 7, 2025), where the Kentucky Court of Appeals suggested that actual notice may satisfy a contractual notice provision notwithstanding a deviation from the specified method. There, however, the court concluded that the notice issue had not been preserved—but still addressed the merits briefly, relying only on *New London*. *Id.* at *6.

PharMerica responds that the PSAs expressly require that any notice of termination be in writing and be delivered by certified mail, return receipt requested, or by a nationally recognized overnight delivery service. ECF No. 20 at 11–12. Because Defendants instead attempted to terminate the agreements by email, PharMerica argues that the termination was ineffective under the PSAs' plain terms. PharMerica further argues that *New London* and *Equitable Life* are

---

[5] The full provision at issue in *Equitable Life* provided:

> Unless automatically terminated by expiration or otherwise as herein elsewhere provided, the Agent's employment hereunder may be terminated forthwith at any time at the option of either party hereto by notice to the other, as of the date therein set forth for such termination. Such notice, if from the Agent, *shall be sufficient if* in writing and delivered in person to the Agency Manager or mailed to him or the Society. Such notice, if from the Society, *shall be sufficient if* in writing and delivered in person to the Agent or mailed to him at his last known address on file with the Society.

563 S.W.2d at 719 (emphasis added).

distinguishable because the PSAs do more than identify methods of notice that are sufficient. ECF No. 20 at 12. For support, PharMerica cites *Scheib v. Commonwealth Anesthesia, P.S.C.*, No. 2010-CA-000781-MR, 2011 WL 5008089 (Ky. Ct. App. Oct. 21, 2011). The employment contract at issue in *Scheib* provided that its term "shall begin as of the date hereof and continue until the Employee or the Employer's Board of Directors terminates this Agreement by giving not less than one hundred twenty (120) days' written notice to the other specifying the date of the termination." 2011 WL 5008089, at *3. The Kentucky Court of Appeals rejected the argument that actual notice excused compliance with the foregoing provision requiring advance written notice and distinguished cases that did not involve contracts with express written notice requirements. *Id.* at *3–4.

PharMerica has the stronger argument. The PSAs here do not merely identify methods of notice that are sufficient; they require any termination or non-renewal to be made by "written notice" in Section 6 and state in Section 17.D that a party "shall" send the required written notice by certified mail or a national overnight delivery service. Mallard Bay PSA §§ 6.A, 6.B, 17.D; Caroline and Manokin PSA §§ 6.A, 6.B, 17.D. If a party seeking to terminate the PSA fails to provide written notice, then the termination is ineffective; Section 6.A provides that the PSA automatically renews. And, read according to its ordinary meaning, "shall" in Section 17.D denotes a mandatory obligation respecting the method by which notice is delivered. *See Scheib*, 2011 WL 5008089, at *4 (quoting *Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005)) ("[A] written instrument will be strictly enforced according to its terms[.]"). Unlike the agreement in *Equitable Life*, which merely identified methods of notice that would be "sufficient," 563 S.W.2d at 719, the PSAs make compliance with the specified methods of notice a contractual requirement. *Scheib* lends support to PharMerica's position that actual notice does not excuse noncompliance where

the parties have expressly prescribed the way notice must be given. *See* 2011 WL 5008089, at *2–4.[6]

In sum, PharMerica states plausible claims for breach of contract by Mallard Bay and Key Health in terminating their PSAs through an email that did not comply with the contractual notice requirements. *See id.* (trial court erred in granting summary judgment in favor of defendant on plaintiff's claim that defendant breached employment agreement by failing to provide contractually required advance written notice).

Defendants separately challenge PharMerica's claim for breach of contract based on ineffective termination as founded upon Section 6.D of the PSAs, which Defendants contend is unenforceable. ECF No. 15-2 at 18–25. Section 6.D of each PSA provides, in part: "Notwithstanding anything in this Agreement to the contrary, any termination notice issued by [Mallard Bay or Key Health] when there are payment amounts past due to [PharMerica] is void and shall have no effect." Mallard Bay PSA § 6.D; Caroline and Manokin PSA § 6.D. Defendants argue that this provision is unenforceable because it lacks mutuality, creates a contract in perpetuity, and is unconscionable. ECF No. 15-2 at 18. PharMerica responds that Defendants voluntarily agreed to the challenged provision and that it is enforceable. ECF No. 20.

The Court finds that it need not—and should not—reach this issue at this early stage of the case. Even assuming (without deciding) that Section 6.D is unenforceable, Plaintiff would still have a plausible claim based on the PSA's exclusivity and termination provisions. Section 4 of

[6] Defendants' efforts to distinguish *Scheib* are unpersuasive. Defendants emphasize that *Scheib* involved an employment contract and cite *Dye v. Thomas More Univ., Inc.*, No. 2:19-CV-087-CHB, 2021 WL 4006123 (E.D. Ky. Sept. 2, 2021), for the proposition that Kentucky law treats employment contracts differently than commercial agreements with respect to termination notice requirements. But *Dye* does not stand that proposition, as it, like *Scheib*, involved an employment contract. *See Dye*, 2021 WL 4006123, at *14–15. The Court sees no legal or rational basis for reading the notice requirements to which the parties agreed out of the PSAs.

each PSA provides that PharMerica "shall be" Mallard Bay and Key Health's "sole, exclusive and preferred provider of" certain pharmacy-related goods and services during the term of each PSA. Mallard Bay PSA § 4; Caroline and Manokin PSA § 4. Sections 6.A and 17.D of each PSA provide for automatic renewal of the contract term if the party seeking to terminate the agreement fails to provide 60 days' advance written notice as prescribed by each contract. *See* Mallard Bay PSA §§ 6.A, 17.D; Caroline and Manokin PSA §§ 6.A, 17.D. And, as explained in *supra*, PharMerica alleges that, although Key Health's CEO sought to terminate the PSAs by email on September 8, 2025, this email failed to satisfy the PSAs' notice requirements. Accepting the facts alleged in the Complaint as true and drawing reasonable inferences in PharMerica's favor, it is plausible that each PSA automatically renewed and its exclusivity provision remained in effect beyond the 60-day period after the contracting Defendant sought to terminate its PSA.

Moreover, Defendants' Rule 12(b)(6) motion tests only the "facial plausibility" of PharMerica's claims, *Iqbal*, 556 U.S. at 678, and the Court cannot find that Section 6.D is, on its face, substantively unconscionable or void for lack of mutuality of obligation. "Substantive unconscionability 'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 577 (Ky. 2012) (citation omitted). To determine whether contract terms are substantively unconscionable, "courts consider 'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" *Id.* (citation omitted); *cf.* Ky. Rev. Stat. Ann. § 355.2-302 ("When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."). At this early stage of

the case, no showing has been made as to the reasonableness of Section 6.D within its commercial context.

In sum, the Court finds the Complaint states plausible claims for breach of contract by Mallard Bay and Key Health based on the PSAs' exclusivity and termination notice provisions. Defendants' motion for partial dismissal of Counts I and II is denied.

**B. Counts III through VI**

Plaintiffs assert claims for breach of implied contract by Facility Defendants in Count III, and claims for unjust enrichment, promissory estoppel, and quantum meruit against all Defendants in Counts IV, V, and VI, respectively.[7] Counts IV through VI are pleaded in the alternative to Counts I through III and to each other. Compl. ¶¶ 96, 108, 116. Defendants argue that Counts III through VI should be dismissed because there were express written agreements between the parties that control their disputes and, therefore, PharMerica's alternative equitable theories fail as a matter of law. ECF No. 15-2 at 25. PharMerica contends that, under Kentucky law, the challenged claims may be pleaded in the alternative to its breach-of-contract claims and that Defendants' argument for dismissal is premature at the motion to dismiss stage. ECF No. 20 at 19.

The Court finds that the Complaint fails to state plausible quasi-contract and equitable claims against Mallard Bay and Key Health in Counts III through VI because there is no dispute that express contracts governed the relationships between PharMerica and each of these Defendants. Under Kentucky law, "there can be no implied contract or presumed agreement where there is an express one between the parties in reference to the same subject matter[.]" *Knittel v. First Fin. Mortg. Corp.*, Civ. No. 08-44-JBC, 2009 WL 1702174, at *4 (E.D. Ky. June 17, 2009)

[7] As with PharMerica's breach-of-contract claims, the parties appear to agree that Kentucky law governs all remaining claims asserted in the Complaint.

(quoting *Fruit Growers Express Co. v. Citizens Ice and Fuel Co.*, 112 S.W.2d 54, 56 (Ky. 1937)). Similarly, the "doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Id.* (quoting *Codell Construction Co. v. Commonwealth of Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977)). "*Quantum meruit* is an equitable remedy invoked to compensate for an unjust act, whether it is harm done to a person after services are rendered, or a benefit is conferred without proper reimbursement." *Lofton v. Fairmont Specialty Ins. Managers*, Inc., 367 S.W.3d 593, 597 (Ky. 2012). "A claim of quantum meruit necessarily posits that no contract exists between the parties—where a contract does exist, quantum meruit is barred and the terms of the contract prevail." *Normandy Farm, LLC v. Kenneth McPeek Racing Stable, Inc.*, 701 S.W.3d 129, 143 (Ky. 2024) (citing *Vanhook Enterprises, Inc. v. Kay and Kay Contracting, LLC*, 543 S.W.3d 569, 574 (Ky. 2018)). *See also Miller v. Reminger Co., L.P.A.*, No. 3:11-CV-315-CRS, 2012 WL 2050239, at *11–12 (W.D. Ky. June 6, 2012) (dismissing implied contract and quantum meruit claims where the parties had a written employment agreement).

The same principle forecloses PharMerica's promissory estoppel claims against Mallard Bay and Key Health. Promissory estoppel involves "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance[.]" *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009), *as modified* (Nov. 2, 2009) (citation omitted). Promissory estoppel, however, "cannot be the basis for a claim if it represents the same performance contemplated under a written contract." *Nash-Finch Co. v. Casey's Foods, Inc.*, 762 F. App'x 218, 225 (6th Cir. 2018); *see also Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 778 (E.D. Ky. 2019) (citations omitted) (holding that "because promissory estoppel 'is not intended to provide an alternative to a breach of contract claim, where

a contract exists on the subject matter of the alleged promise sought to be enforced, a claim for promissory estoppel is not cognizable'").

While the express contracts between PharMerica and Mallard Bay and Key Health foreclose Plaintiff's quasi-contract and equitable claims against these Defendants, Plaintiff may assert such claims against Caroline and Manokin because it is at least plausible that these entities are not parties to the PSAs at issue. Notably, PharMerica does not assert any breach-of-contract claim against either of these Defendants.

To be sure, PharMerica alleges that "Key Health contracted with PharMerica on behalf of Caroline," Compl. ¶ 33, and "on behalf of Manokin," *id.* ¶ 50, and it alleges, "[u]pon information and belief," that Caroline and Manokin are each "alter egos" of Key Health, *id.* ¶¶ 34, 51. An allegation "upon information and belief" can be an appropriate pleading device where "the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019) (quoting *Malibu Media, LLC v. Doe*, Civ. No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014)). Here, the facts relevant to whether Caroline and Manokin are alter egos of Key Health are likely to be solely within Defendants' possession. And PharMerica's allegations that these limited liability companies share a common member, *see* Compl. ¶¶ 4–6, and that Key Health acted on Caroline and Manokin's behalf in connection with the Caroline and Manokin PSAs, *see id.* ¶¶ 33, 50, tend to support the alter ego theory. *See Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 161 (Ky. 2012) (describing "[t]he alter ego test" as involving consideration of "unity of ownership and interest" between two entities). But this alter ego theory may be disputed, and deciding whether two entities are alter egos for corporate veil-piercing purposes is fact-intensive under Kentucky law. *See id.* at 159–68

(Ky. 2012) (holding that the "alter ego formulation" and "instrumentality theory" of corporate veil-piercing doctrine "resolve[] to two dispositive elements: (1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice[,]" and recognizing that the first element calls for consideration of numerous factors). Given the potential fact-intensive dispute over PharMerica's claim that Caroline and Manokin are alter egos of Key Health, the Court cannot, at this early stage of the case, find that PharMerica's alternative claims for quasi-contract and equitable relief against Caroline and Manokin are foreclosed by the existence of the PSAs.

For the foregoing reasons, the Court grants Defendants' motion to dismiss Counts III through VII as to Mallard Bay and Key Health but not as to Caroline and Manokin.

**C. Count VII**

In Count VII of the Complaint, PharMerica asserts a tortious interference claim against Key Health for inducing Mallard Bay to breach the Mallard Bay PSA by causing it not to pay PharMerica as required by the PSA.[8]

Key Health argues that PharMerica's claim for tortious interference fails for two reasons. First, Key Health contends that it cannot be liable for tortious interference because it is a party to the PSA at issue. ECF No. 15-2 at 30. Second, Key Health argues that PharMerica's claim is barred by the economic loss doctrine because it arises from the same contractual duties and alleged breaches underlying PharMerica's breach-of-contract claims. *Id.* at 31.

PharMerica responds that neither argument flies. First, it argues that the Mallard Bay PSA was executed between PharMerica and Mallard Bay—not Key Health. Accordingly, PharMerica

[8] As with PharMerica's breach-of-contract claims, the parties appear to agree that Kentucky law governs the tortious interference claim asserted in the Complaint.

contends that its claim against Key Health for tortious interference with the Mallard Bay PSA is viable because Key Health was not a party to that agreement. ECF No. 20 at 22. Second, PharMerica argues that an "emerging trend" exists among the courts that "exclude[s] tortious interference claims from the economic loss doctrine when the duty to not interfere with an existing contract arises independently from the contract." *Id.* at 24. And, according to PharMerica, Key Health had an independent, non-contractual duty under Kentucky common law to not induce Mallard Bay to breach the Mallard Bay PSA. *Id.*

To prove a claim of tortious interference under Kentucky law, a plaintiff must show:

> 1) the existence of a contract; 2) defendant's knowledge of the contract; 3) defendant's intent to cause a breach of that contract; 4) that defendant's actions in fact caused a breach of the contract; 5) that plaintiff suffered damages as a result of the breach; and 6) that defendant enjoyed no privilege or justification for its conduct. *See Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6-7 (Ky. App. 2012) (citation omitted).

*Seeger Enters., Inc. v. Town & Country Bank & Tr. Co.*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017). "[I]t is axiomatic that the tortfeasor cannot be a party to the contract." *Brown & Brown of Kentucky, Inc. v. Walker*, 652 S.W.3d 624, 641 (Ky. Ct. App. 2022) (citations omitted).

PharMerica alleges that "Key Health was aware of the Mallard Bay PSA" and Mallard Bay's contractual obligations, and that it "intentionally induced Mallard Bay to breach the Mallard Bay PSA by causing or directing it to not pay PharMerica, which was in violation of the PSA." Compl. ¶¶ 125–26. At the same time, PharMerica alleges, "[u]pon information and belief," that Key Health is the alter ego of Mallard Bay. Compl. ¶ 17. Accepting that allegation as true, Key Health could not plausibly act as an independent third party in interfering with the Mallard Bay PSA; rather, it would act through Mallard Bay, the contracting party, itself. But the alleged alter ego relation between Key Health and Mallard Bay may be disputed, and, as noted in Part III.B *supra*, the determination of a corporate alter ego is fact-intensive. *See Inter-Tel*, 360 S.W.3d at

159–68 (recognizing that "[t]he alter ego test" calls for consideration of numerous factors). If the evidence fails to establish that Key Health and Mallard Bay are alter egos, then it is plausible that Key Health is liable in tort for intentionally causing Mallard Bay to breach the Mallard Bay PSA without justification or privilege. The Court will permit PharMerica to plead its tortious interference claim in the alternative to its alter ego theory.

Defendants argue that the Complaint includes allegations that "Key Health 'manages, owns, and operates[]' . . . Mallard Bay," ECF No. 15-2 at 30 (citing Compl. ¶¶ 1, 3, 6, 17–18, 61), but the Complaint does not include any such allegation. PharMerica alleges that Key Health and Facility Defendants "operate[], manage[], and own[]" the Facilities, Compl. ¶ 1; that Mallard Bay and Key Health share a common member and "operate under the same nucleus of control, out of the same office[,]" *id.* ¶¶ 3, 6, 17; that "Mallard Bay paid Key Health for management services related to the [Mallard Bay] Facility or shared proceeds of the Facility's operations[,]" *id.* ¶ 18; and that Key Health's CEO purported to terminate all PSAs at issue here, including the Mallard Bay PSA, *id.* ¶ 61. But the Complaint does not include an allegation of any parent-subsidiary relationship between Key Health and Mallard Bay, as Defendants suggest. *See* ECF No. 21 at 17. Under Kentucky law, "a parent corporation has a privilege to interfere in the contractual relations of its wholly-owned subsidiary, unless it employs wrongful means or acts contrary to its subsidiary's interests." *Sparkman v. Consol Energy, Inc.*, 571 S.W.3d 569, 572 (Ky. 2019). But PharMerica does not allege that Mallard Bay is a wholly-owned subsidiary of Key Health. The Court declines to dismiss PharMerica's tortious interference claim against Key Health on this basis.

PharMerica's tortious interference claim against Key Health is not barred by the economic loss doctrine. "The economic loss rule is a judicially created doctrine that marks the fundamental

boundary between contract law . . . and tort law . . . ." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 791 (Ky. 2017) (quoting *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 583 (Ky. 2004) (Keller, J., concurring)). Under this doctrine, "[a] breach of duty which arises under the provisions of a contract between the parties must be addressed under contract, and a tort action will not lie." *Nami Res. Co., L.L.C. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 336 (Ky. 2018) (quoting *Superior Steel*, 540 S.W.3d at 792); *see also id.* ("[W]hen a plaintiff may obtain complete relief for his contractual losses by means of compensatory damages under a breach of contract claim, even when the breach is motivated by malice and accomplished through fraud, he may not simultaneously recover punitive damages after being made whole on his contractual damages.").

The Kentucky Supreme Court recognizes, however, that "[a] breach of a duty *arising independently* of any contract duties between the parties . . . may support a tort action." *Id.* (quoting *Superior Steel*, 540 S.W.3d at 792) (emphasis in *Superior Steel*). Under this principle, courts have generally declined to apply the economic loss doctrine to bar claims for tortious interference with contract "when a plaintiff alleges that the defendant's conduct breached an 'independent duty,' rather than a duty imposed by the contract." *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 423 (D.N.J. 2021) (citation omitted). *See also USI Ins. Servs., LLC v. Ellis*, No. 3:21CV797, 2023 WL 2244677, at *5 (E.D. Va. Feb. 27, 2023) (denying motion to dismiss claim for tortious interference with contractual relations under the economic loss doctrine where plaintiff pleaded sufficient facts and "identified an independent duty not to interfere with contractual relations"); *401 N. Charles, LLC v. Sonabank*, Civ. No. RDB-17-0872, 2018 WL 6570680, at *5 (D. Md. Dec. 13, 2018) (citing *Tribalco, LLC v. Hue Technology, Inc.*, JFM-11-935, 2011 WL 3821074 (D. Md. Aug. 26, 2011)) (declining to apply economic loss doctrine to tortious

interference claim "implicat[ing] a duty independent of those [defendant] owed under its contracts[,]" but finding this claim to be futile for other reasons); *ITW Charlotte, LLC v. ITW Com. Constr., N. Am.*, No. 317CV00473FDWDCK, 2017 WL 6542511, at *4 (W.D.N.C. Dec. 21, 2017) (denying motion to dismiss claim for tortious interference with contract under the economic loss doctrine where the tort claim "is identifiable and distinct from a breach of contract claim").

The economic loss doctrine does not bar PharMerica's tortious interference claim against Key Health. The claim is not based on Key Health's contractual duties under the Caroline and Manokin PSA. It is based instead on Key Health allegedly inducing Mallard Bay to breach the Mallard Bay PSA by causing or directing Mallard Bay's failure to pay PharMerica in accordance with that PSA, intentionally and without justification or excuse. Compl. ¶¶ 126–27. The economic loss doctrine does not bar PharMerica's tortious interference claim against Key Health because Key Health's alleged duty not to induce or cause Mallard Bay's contractual breach is plausibly independent of any contractual duty Key Health owed PharMerica. Unless Key Health and Mallard Bay are shown to be alter egos,[9] Key Health's duty not to induce or cause Mallard Bay's contractual breach without justification is a duty based in tort—not contract. PharMerica's allegations that Key Health breached this tort duty, causing damages to PharMerica, *see* Compl. ¶ 127, are sufficient to state a claim for tortious interference independent of PharMerica's breach-of-contract claims.[10]

For the foregoing reasons, Defendants' challenge to Count VII fails at this early stage of the case.

---

[9] As noted *supra*, the question of whether Key Health and Mallard Bay are alter egos may be disputed and is not a question that can be resolved at this stage of the case.

[10] Defendants only challenge PharMerica's tortious interference claim based on the economic loss doctrine and the relationship between Key Health and Mallard Bay. They do not otherwise challenge the sufficiency of the facts offered in support of the tortious interference claim.

**D. Count VIII**

In Count VIII of the Complaint, PharMerica asserts a claim for attorneys' fees against Mallard Bay and Key Health under the PSAs. Defendants argue that Count VIII should be dismissed because there is no independent cause of action for attorneys' fees. *See* ECF No. 15-2 at 25. PharMerica effectively concedes the point, clarifying that it "is not asserting its claim for attorneys' fees as an independent cause of action, rather it is asserting its right to obtain attorneys' fees as a form of relief pursuant to the PSAs." ECF No. 20 at 24. PharMerica nevertheless contends that Count VIII should be sustained because Kentucky courts have recognized that merely requesting attorneys' fees in the prayer for relief may be insufficient to preserve such a request. *See* ECF No. 15-2 at 25.

The authorities PharMerica cites do not support maintaining a standalone count for attorneys' fees. In *Hernandez v. Cnty. Invs., LLC*, 696 S.W.3d 832, 837 (Ky. Ct. App. 2024), and *O'Rourke v. Lexington Real Est. Co. L.L.C.*, 365 S.W.3d 584, 586 (Ky. Ct. App. 2011), the courts held that a landlord had failed to adequately plead entitlement to attorneys' fees under Ky. Rev. Stat. § 383.660(3) because the complaint did not allege facts that would put the tenant on notice that the statute authorizing attorneys' fees in this context was applicable.[11] Those decisions did not hold that attorneys' fees must be asserted as a separate cause of action.

Here, the Complaint expressly alleges that the PSAs authorize the recovery of attorneys' fees in the event of a breach, thereby placing Defendants on notice of the legal basis for PharMerica's claim to that form of relief. Defendants do not dispute that the PSAs contain this provision. *See* ECF No. 21 at 19. While PharMerica may pursue attorneys' fees as a form of relief

[11] Kentucky Revised Statutes § 383.660(3) provides that if a tenant's noncompliance with a rental agreement "is willful[,] the landlord may recover actual damages and reasonable attorney's fees."

in accordance with the PSAs, Count VIII does not state an independent claim for relief and shall be dismissed.

## IV. ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendants' Motion to Dismiss (ECF No. 15) is GRANTED IN PART AND DENIED IN PART;
2. Counts III, IV, V, and VI of the Complaint are DISMISSED without prejudice as to Mallard Bay;
3. Counts IV, V, and VI are DISMISSED without prejudice as to Key Health; and
4. Count VIII is DISMISSED in its entirety.

It is so ORDERED this 31st day of August, 2026.

/S/
Matthew J. Maddox
United States District Judge